FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 28, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER TODD SMITH, | No. 2:16-cv-00380-MKD |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON SECTION 1983 CLAIM |
| vs. | |
| AMERICAN BEHAVIORAL HEALTH SYSTEMS, and JOHN DOE, | **ECF No. 27** |
| Defendants. | |

Before the Court is Defendant American Behavioral Health Systems'

(ABHS) Motion for Summary Judgment, ECF No. 27. The Court heard

argument on April 30, 2018. Jeffry Finer appeared on behalf of Plaintiff

Christopher Smith. Gerald Kobluk appeared on behalf of Defendant ABHS.

The Court, having reviewed the briefing, the record, and the files therein and

heard argument, is fully informed. For the reasons discussed below, the Court

GRANTS Defendant ABHS' Motion, ECF No. 27, for summary judgment on

the Section 1983 claim.

ORDER - 1

# JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

# PROCEDURAL BACKGROUND

Plaintiff Smith initiated this civil rights action pro se.  On October 26, 2016, the Court received Smith's pro se complaint, ECF No. 1, and an application to proceed in forma pauperis (IFP), ECF No. 2.  On the same day, the Clerk of Court sent Smith a letter indicating that the Court could not proceed with the complaint until Smith either paid the filing fee or submitted a statement of his inmate account for the six months immediately preceding submission of the complaint (PLRA statement).  ECF No. 3.  On November 7, 2016, Smith submitted a PLRA statement, reflecting his account balance from May 25, 2016 to October 31, 2016. ECF No. 5.  On January 3, 2017, Smith submitted a supplemental PLRA statement, reflecting his account balance from May 25, 2016, to December 31, 2016.  ECF No. 6.  Also on January 3, 2017, Smith filed an additional motion to proceed IFP. ECF No. 7.  On January 6, 2017, the Court granted Smith's initial application to proceed IFP, ECF No. 2, and denied as moot the motion to proceed IFP, ECF No. 7.  ECF No. 8.

On January 6, 2017, the Court ordered Smith to amend his complaint or file a motion for voluntary dismissal.  ECF No. 10.  On March 3, 2017, Smith filed the

first amended complaint pro se. ECF No. 11. On March 31, 2017, the Court issued a second order directing Smith to amend or voluntarily dismiss the complaint. ECF No. 12. On May 1, 2017, Smith, through counsel, filed a second amended complaint. ECF No. 13.[1]

The second amended complaint alleges ABHS' failure to escort Smith to medical care from December 27 to 29, 2013 and corresponding denial of necessary medical care, gives rise to two claims: (1) a 42 U.S.C. § 1983 claim for violation of Smith's Fourth and Fourteenth Amendment rights, and (2) a negligence claim under state law. Smith seeks money damages for physical and emotional harm and attorney's fees. ABHS filed an answer on August 28, 2017. ECF No. 19. On January 22, 2018, ABHS filed a motion for summary judgment regarding Smith's Section 1983 claim. ECF No. 27.

During oral argument on ABHS' motion for summary judgment, the Court noted that Smith's second amended complaint claimed relief under the Fourth and Fourteenth Amendments, ECF No. 12 at 1, but the parties' briefing on summary judgment addressed issues under the Eighth Amendment. *See* ECF No. 27 at 9-12,

_____

[1] Because Smith's second amended complaint was filed by counsel and not pro se, it was not subject to the same PLRA screening procedures as Smith's first two complaints. 28 U.S.C. § 1915A(a).

ECF No. 39 at 17-21. Smith's counsel clarified that the basis of Smith's deliberate indifference claim is the Eighth Amendment. Per the Court's directive at the hearing, and without objection by Defendant, Smith filed a third amended complaint on May 2, 2018 alleging a Section 1983 claim for violation of Smith's Eighth and Fourteenth Amendment rights, and a negligence claim under state law. ECF No. 44 at 1.[2]

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

---

[2] At the hearing, the parties agreed that the underlying facts supporting the claims would not change and the relevant briefing already submitted for summary judgment would be applicable to the third amended complaint.

find for the plaintiff." *Id.* at 252. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d).

A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations).

Moreover, a moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is not "sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Anderson*, 477 U.S. at 249. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Finally, in ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

## BACKGROUND

The following facts are not in dispute. On November 14, 2013, Smith pled guilty to one count of possession of methamphetamine in Walla Walla County Superior Court. ECF No. 28-1 at 5. On November 25, 2013, Smith was sentenced to 24 months in community custody, on the condition that Smith remained in chemical dependency treatment for six months. *Id.* at 11. This sentence was entered pursuant to Washington's Drug Offender Sentencing Alternative program (DOSA). RCW § 9.94A.660.

Washington's DOSA program provides an opportunity for alternative

sentencing for individuals convicted of certain drug or alcohol offenses. RCW § 9.94A.660. As an alternative to the standard sentencing range for a qualifying criminal conviction, the court may sentence a defendant to either a prison-based DOSA or a community-based DOSA. Under a prison-based DOSA, the defendant is confined in a state facility and provided with substance abuse treatment services. RCW § 9.94A.662. Under a community-based DOSA, the defendant is released to a term of community custody, conditioned on the defendant's participation in residential substance abuse treatment services for three to six months. RCW § 9.94.664. Successful completion of a community-based DOSA may result in termination of a defendant's community custody status. *Id.*

ABHS is a private residential drug and alcohol rehabilitation center. ECF No. 28 at 1, ¶ 2. Clients are referred to ABHS from a variety of sources. *Id*. at 2, ¶ 3. Payment sources for residential substance abuse disorder treatment services comes from a variety of sources, including "private pay, private health insurance, Native American (Title 19), Behavioral Health Organizations (BHOs), Medicaid, and the Washington Department of Corrections (DOC)." *Id*. The Washington Department of Corrections (DOC) pays for community-based DOSA clients' treatment at ABHS. *Id.* at 2, ¶ 4. Offenders who receive DOSA treatment services voluntarily agree to participate in community-based

residential substance abuse treatment. *Id.*

DOSA clients receive the same treatment as other residential clients at ABHS. *Id.* DOC does not make any clinical decisions about a DOSA client's treatment at ABHS, but ABHS is required to send written treatment compliance reports to the state court. *Id.* at 2, ¶¶ 5-6. ABHS' policy does not permit clients to leave its facility without permission or a staff escort. *Id.* at 3, ¶ 7. However, ABHS is not a locked facility and clients are not stopped or restrained from leaving the facility. *Id.* at 3, ¶ 6.

ABHS policy prohibits all clients from leaving the ABHS facility for medical care without prior approval or an escort from ABHS staff. ECF No. 28 at 3, ¶¶ 7-8.[3] ABHS has a health care coordinator on staff during regular business hours to assist client with arrangements and transportation for health

---

[3] ABHS contends that for medical emergencies, the requirement to obtain prior permission to leave is excused and all clients have the right to leave ABHS to go across the street to Valley Hospital Emergency Room (Valley ER). ECF No. 28 at 3, ¶ 8. Smith asserts that he was never made aware of this policy. ECF No. 37 at 6-7. ABHS provided no documentation to supports its assertion that the permission requirement is excused in the case of medical emergencies or that Smith was notified of any policy regarding medical emergencies.

care needs.  *Id.* at 3, ¶ 8.  ABHS is located across the street from Valley

Hospital, and arrangements are often made for clients to receive care at the

hospital or the local urgent care clinics.  *Id.*

Pursuant to his community-based DOSA sentence, Smith was admitted to

residential substance abuse treatment at ABHS on November 26, 2013.  ECF No.

28-1 at 62.  While at ABHS, Smith requested and was approved for medical

leave on six different occasions: November 28, 2013 (to Valley ER for wrist

pain); December 16, 2013 (to Valley ER for dental abscess); December 18, 2013

(to a dentist for tooth pain); December 24, 2013 (to Northwest Orthopedic

Specialists for wrist pain); December 24, 2013 (to Valley ER for sinobronchial

syndrome and sinusitis); and December 26, 2013 (to Valley ER for flu).  ECF

No. 28 at 4, ¶ 10.

After the December 26, 2013 visit to Valley ER, Smith returned to ABHS

with treatment notes indicating he should return to the ER if his condition

worsened.  ECF No. 28-1 at 47.  Smith was placed in isolation with other ABHS

clients suffering from flu symptoms.  ECF No. 28-1 at 51.  On December 30,

2013, Smith collapsed and was taken to the emergency room.  ECF No. 35 at 6.

Smith remained in the hospital for 45 days, 25 of which were spent in intensive

care.  *Id.*  Smith was medically discharged from ABHS on January 2, 2014.  ECF

No. 28-1 at 62.

**DISCUSSION**

**A. Statute of Limitations**

ABHS seeks summary judgment on both claims contending that Smith's complaint was filed after the statute of limitations had passed. ECF No. 27 at 3-5.[4]

"Section 1983 does not contain its own statute of limitations." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014). Federal courts are to "apply the forum state's statute of limitations for personal injury actions … except to the extent any of these laws is inconsistent with federal law." *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007). Section 1983 claims in Washington are subject to a three-year statute of limitations under RCW § 4.16.080(2). *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981). When a federal court borrows a state statute of limitations, federal law still governs when the claim accrues. *Lukovsky v. City and Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). "[A] claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the

---

[4] In anticipation of argument on this issue, the Court ordered limited disclosure to counsel of documents that had previously been filed as "court only" documents. ECF No. 42.

ORDER - 10

action.'" *Id.* The parties agree that Smith's injury accrued on December 30, 2013. Accordingly, the statute of limitations on Smith's claim expired on December 30, 2016.

The parties dispute when Smith's complaint was filed. "In most civil actions, the submission and filing of a complaint are simultaneous events. That is not the case when a prisoner submits a complaint with an application to proceed IFP, where there is normally a gap in time between the submission of the complaint and its filing." *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). A plaintiff who applies to proceed IFP must also submit a copy of his prisoner trust fund statement for the six-month period immediately preceding filing of the complaint. 28 U.S.C. § 1915.

Generally, a Section 1983 action "is commenced in federal district court for the purposes of the statute of limitations when the complaint is filed." *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). However, pro se inmates' Section 1983 complaints are subject to the mailbox rule. *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)). Therefore, a pro se inmate's complaint is filed when the plaintiff "deliver[s] it to the prison authorities for forwarding to the court clerk." *Lack*, 487 U.S. at 276. The mailbox rule also applies to the filing of PLRA trust account statements. *James v. Madison St. Jail*, 122 F.3d 27, 28 (9th Cir. 1997).

Here, Smith was proceeding as a pro se inmate at the time he filed his original complaint and initial IFP application. ECF Nos. 1, 2. Therefore, the mailbox rule applies to Smith's complaint. *Douglas*, 567 F.3d at 1107. Although it is not known when Smith delivered these documents to prison authorities for mailing, Smith's complaint was received by the Clerk of Court on October 26, 2016, more than two months prior to the statute of limitations expiring. ECF No. 1. Smith's initial application to proceed IFP was also received by the Clerk of Court on October 26, 2016. ECF No. 2. Moreover, Smith corrected the identified deficiency by November 7, 2016, ECF No. 5, which was well before the statute of limitations expired on December 30, 2016.

ABHS argues that a plaintiff's complaint is not "filed" for purposes of determining compliance with the statute of limitations until the plaintiff has either paid the court filing fee or the court has granted the plaintiff's application for IFP status. ECF No. 27 at 4 (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644 (6th Cir. 1998)). This argument is inconsistent with the Ninth Circuit's application of the mailbox rule to pro se inmates' Section 1983 complaints. *Douglas*, 567 F.3d at 1107.

Even if it is not known on which dates Smith submitted his paperwork to prison officials for forwarding to the Clerk of Court, it is clear that Smith submitted a complaint and remedied the deficiencies in his IFP application

paperwork before the statute of limitations expired.[5]  Accordingly, ABHS'

motion for summary judgment based on the claims being filed after the statute of

limitations expired is DENIED.

**B. State Action Requirement of Section 1983**

ABHS next seeks summary judgment on the Section 1983 claim

contending that ABHS did not act under color of state law.  ECF No. 27 at 5-9.

A claim under Section 1983 requires: "(1) a violation of rights protected

by the Constitution or created by federal statute, (2) proximately caused (3) by

conduct of a person (4) acting under color of state law."  *Crumpton v. Gates*, 947

F.2d 1418, 1420 (9th Cir. 1991) (internal quotation marks omitted).  "The

traditional definition of acting under color of state law requires that the

defendant in a section 1983 action have exercised power possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the

authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citation

and quotation marks omitted).  Conduct that amounts to state action under the

Fourteenth Amendment is action under color of state law for purposes of Section

1983.  *See id.*; *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic*

---

[5] Furthermore, after ECF Nos. 2, 5, and 6 were made available to the parties, ECF
No. 42, ABHS conceded at argument that Smith's complaint was timely filed.

*Ass'n*, 531 U.S. 288, 309 (2001) ("[S]tate action is an element of a § 1983 claim."). "The ultimate issue in determining whether a person is subject to suit under section 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

"When addressing whether a private party acted under color of law, [the court] start[s] with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). "[S]tate action requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). The Ninth Circuit has used a number of tests to determine whether a private individual's actions amount to state action: (1) the joint action test; (2) the state compulsion test; (3) the governmental nexus test; and (4) the public function test. *Rimac v. Duncan*, 319 F. App'x 535, 537 (9th Cir. 2009) (citing *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). However, "there is no specific formula for defining state action," and the presence of state

action is an individualized factual determination. *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (citing *Melara v. Kennedy*, 541 F.2d 802, 805 (9th Cir. 1976)).

A court's state action analysis "begins by identifying the specific conduct of which the plaintiff complains." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812–13 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51); *see also Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) ("Faithful adherence to the 'state action' requirement ... requires careful attention to the gravamen of the plaintiff's complaint."). "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002) (internal quotation marks and alteration omitted). Here, the specific conduct underlying Smith's complaint centers on Smith's access to medical care while Smith participated in residential substance abuse treatment services at ABHS.

*1. Joint Action*

The joint action test for state action is met where private persons are "willful participants in joint activity with the State or its agents that effects a constitutional deprivation." *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (internal quotation marks and alteration omitted); *United States v. Price*, 383 U.S. 737, 794 (1966) (The "joint action" test is met when "private persons

[are] jointly engaged with state officials in the prohibited action.").  Here, there

is no evidence that any state officials were involved in ABHS' decision-making

surrounding Smith's permission to seek medical care or his medical treatment

from December 27-30, 2013.  Moreover, Smith fails to allege or identify any

factual basis to support the conclusion that ABHS willfully participated in joint

activity with the state to effect a constitutional deprivation' actions amounted to

state action under the joint action test.  ECF No. 39 at 9-15.  Accordingly, ABHS

is not a state actor by way of the joint action test.

### 2. State Compulsion

"State action may be found under the state compulsion test where the state

has 'exercised coercive power or has provided such significant encouragement,

either overt or covert, that the [private actor's] choice must in law be deemed to

be that of the State.'"  *Johnson*, 113 F.3d at 1119 (quoting *Blum*, 457 U.S. at

1004).  Here, pursuant to Smith's request for an alternative sentence, the state

permitted Smith to undergo residential substance abuse treatment in lieu of

incarceration.  ECF No. 35 at 1, ¶ 1.  Smith's criminal judgment, sentence, and

DOSA agreement contain no mention of ABHS.  ECF No. 28-1 at 5-18.  The

state did not exercise "coercive power" or provide "such significant

encouragement" to ABHS such that ABHS' conduct in handling Smith's

medical issues "must in law be deemed to be that of the State."  *Johnson*, 113

F.3d at 1119. The state neither "compel[led]" nor was "directly involved in that decision." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52. Moreover, Smith does not contend that ABHS is a state actor pursuant to the state compulsion test. *See* ECF No. 39 at 9-16. Accordingly, Smith fails to allege or identify any factual basis to support the conclusion that ABHS' actions amounted to state action under the state compulsion test.

### 3. Governmental Nexus

Private conduct may be state action if there is "such a close nexus between the State and the challenged action" that the individual's conduct "may be fairly treated as that of the State itself." *Brentwood Acad*., 531 U.S. at 295–96 (internal citations and quotation marks omitted); *see also Kuba v. Sea World, Inc*., 428 F. App'x 728, 731 (9th Cir. 2011) ("[S]tate action arises from pervasive entwinement to the point of largely overlapping identity." (internal citation omitted)).

Here, there is no sufficiently close nexus to raise ABHS to the level of a state actor. As a substance abuse treatment facility, ABHS is regulated by the state. *See* RCW § 70.96A.011 *et seq*. Although, the state DOC pays for DOSA clients' treatment at ABHS, ECF No. 28 at 2, ¶ 4, the state does not determine the type or level of services a DOSA client receives at ABHS. *Id.* at 2, ¶ 5. Clinical decisions are left up to ABHS' staff. *Id.* ABHS receives funding from a

variety of other public and private sources. *Id.* at 2, ¶ 3. Although ABHS is

required to provide progress reports to the court, ABHS is not a locked facility

and does not involuntarily confine clients. *Id.* at 2-3, ¶ 6. In the event a DOSA

client were to leave ABHS' facility, ABHS is not empowered to take custody of

the client. *Id.* Rather, DOC policy requires the treatment facility to notify the

DOSA client's community corrections officer in the event the client absconds

from treatment, and the community corrections officer reports the behavior to

the court. ECF No. 40-1 at 10-11.

The fact that the state authorized ABHS to provide substance abuse

treatment to offenders does not convert ABHS' conduct into state action. *See*

*Rendell-Baker*, 457 U.S. at 832-37 (insufficient nexus between private school

and the state, where nearly all of the school's students were referred by public

school committees or the drug rehabilitation division of the state's mental health

department; the school agreed to carry out individualized plans developed by the

committees for referred students; and the state reimbursed the school for referred

students' tuition expenses); *Smith v. Devline*, 239 F. App'x 735, 735-36 (3d Cir.

2007) (holding that a private residential treatment center to which plaintiff was

paroled did not act under color of state law); *Gross v. Samudio*, 630 F. App'x

772, 779 (10th Cir. 2015) (holding that private sex offender treatment programs'

decisions not to admit plaintiff, resulting in revocation of plaintiff's parole, did

not amount to action under color of state law). The treatment services ABHS provides to its clients cannot fairly be treated as the state's actions. *Brentwood Acad.*, 531 U.S. at 295. The facts in this case support a finding that there is no sufficiently "close nexus" between the state and ABHS' treatment services for DOSA clients for ABHS' services to rise to the level of state action.

Moreover, Smith's allegations do not give rise to an inference that "such a close nexus" existed between the state and the specific challenged conduct in this case—ABHS' actions regarding Smith's medical treatment. *Brentwood Acad.*, 531 U.S. at 295. ABHS' protocols regarding medical treatment and its failure to escort Smith to the emergency room cannot fairly be attributed to the state. *See Rendell-Baker*, 457 U.S. at 841-42 (finding no state action where the government had no involvement in the specific challenged action). Accordingly, ABHS is not a state actor pursuant to the governmental nexus test.

### 4. Public Function

For private conduct to qualify as state action under the public function test, the private actor must exercise powers that are "traditionally the exclusive prerogative of the State." *Rendell-Baker*, 457 U.S. at 842; *see also Johnson*, 113 F.3d at 1118. Smith contends that by providing residential substance abuse treatment services to community-based DOSA clients, ABHS engaged in the public function of "incarceration," which is a traditionally exclusive function of

the state. Smith contends he was not at ABHS "voluntarily;" he was there as a result choosing one form of criminal sentence, residential substance abuse drug treatment, over another, traditional incarceration. ECF No. 39 at 14-15. He further argues that ABHS was engaged in the public function of incarceration because (1) Smith could not leave the site without the facility's approval and without an escort; and (2) a violation of that rule would result in a report to DOC and to the sentencing court exposing Smith to resentencing. ECF No. 39 at 14-15.

In contrast, the Court finds that ABHS was providing residential substance abuse treatment services, which is not traditionally an exclusive function of the state. *See, e.g., Merrill v. Mental Health Systems*, No. 3:16-cv-01090-GPC-JMA, 2016 WL 4761789, at *4 (S.D. Cal. Sept. 13, 2016) (finding that residential substance abuse treatment facility for parolees was not a state actor); *Devline*, 239 F. App'x at 735-36 (holding that a private residential treatment center to which plaintiff was paroled did not act under color of state law); *Heggem v. Holmes*, No. C10-1997-RSM-MAT, 2011 WL 7758243, at *5 (W.D. Wash. Dec. 9, 2011) ("Providing chemical dependency counseling is not traditionally and exclusively a government function"), *report and recommendation adopted*, 2012 WL 1378786 (W.D. Wash. Apr. 20, 2012); *Graves v. Narcotics Serv. Counsel*, 605 F. Supp. 1285 (E.D. Mo. 1985) (finding

insufficient nexus to find state action, where halfway house provides drug detoxification treatment as a condition of plaintiff's probation); *McWhirt v. Putnam*, No. 06-4182-CV-C-SOW, 2008 WL 695384, at *7 (W.D. Mo. Mar. 12, 2008) (same, with respect to community agency which houses both current and former inmates, parolees, and non-inmates); *Phillips v. Goord*, No. 08-cv-0957A, 2009 WL 909593, at *3 (W.D.N.Y. Apr. 1, 2009) (same, where no factual allegations regarding non-profit halfway house providing services to a parolee); *see also Kelly v. N.J. Dep't of Corrections*, No. CIV.A. 11-7256 PGS, 2012 WL 6203691, at *6 (D.N.J. Dec. 11, 2012) (sua sponte dismissing complaint against operator of halfway house where plaintiff pled insufficient nexus to find state action). Courts have similarly held that the providing mental health services is not a traditionally exclusive function of the state. *See, e.g.*, *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (determining that "providing mental health services has not been a power which has traditionally been exclusively reserved to the state"); *Wilson v. Azinkhan*, CV 16-8092 JVS, 2017 WL 5633025, *3-4 (C.D. Cal. Nov. 20, 2017) (finding that providing mental health profession providing group therapy and reporting to a government agency regarding a parolee's level of participation is not an exclusive government function). Further, courts have consistently held that the provision of transitional housing to former inmates under parole supervision is not a

function that has traditionally been the exclusive prerogative of the state. *See, e.g., Moore v. Broady*, No. 10–CV–3250, 2010 WL 3125008, at *5 (E.D.N.Y. Aug. 6, 2010) (citations omitted); *see also Rendell-Baker*, 457 U.S. at 842 ("That a private entity performs a function which serves the public does not make its acts state action"); *Young v. Halle Hous. Assoc., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001) ("Although the State of New York has a constitutional interest in providing housing for the needy, the provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state, but has been left to a regulated, and occasionally subsidized, private marketplace").

Moreover, the Court further finds that the provision of residential substance abuse treatment services to community-based DOSA clients is not the functional equivalent to incarceration, which is traditionally an exclusive function of the state. This is in accord with the findings of other courts. *See, e.g., Heggem*, 2011 WL 7758243, at *5; *Merrill*, 2016 WL 4761789, at *4.[6]

Here, the types of services ABHS provides to DOSA clients are not sufficiently akin to incarceration to rise to the level of state action. ABHS'

---

[6] The Court recognizes there is contravening authority, *see, e.g.*, *McBryde v. Thomas*, 2013 WL 6199177, at *5 (D. Mont. Nov. 27, 2013), which the Court finds unpersuasive.

facility is unlocked.  ECF No. 28 at 2, ¶ 6.  ABHS does not provide medical treatment directly to its clients and ABHS facilitates clients' receipt of medical care in the community.  *Id.* at 3, ¶ 8.  If a DOSA client leaves the facility, the client may face revocation of their DOSA.  ECF No. 40-1 at 10-11.  However, DOC policy does not indicate that a DOSA client who absconds from treatment will be charged with escape from custody.  *Id.*  Rather, a DOSA violation is treated as a violation of a condition of community custody, which may be addressed with confinement, additional community custody, or additional residential chemical dependency treatment.  *Id.*; RCW § 9.94A.716.

The DOSA program is also distinguishable from other cases dealing with incarceration because of the amount of choice presented by the program.  At the outset, Smith chose the alternative sentence of a community-based DOSA instead of incarceration.[7]  ECF No. 35 at 1.  Although Smith received treatment at ABHS as a result of a court order, Smith was not specifically ordered to receive treatment at ABHS.  ECF No. 28-1 at 11.  Additionally, unlike traditional incarceration, ABHS' staff do not have the authority to prevent Smith

---

[7] The Court notes that the DOSA program distinguishes between prison-based DOSA sentences and residential DOSA sentences.  RCW §§ 9.94A.662, 9.94A.664.

ORDER - 23

from leaving or to take custody of Smith were he to leave.  ECF No. 28 at 3, ¶ 6.

Because ABHS' services are not akin to incarceration, ABHS was not performing a traditionally public function by providing substance abuse treatment services to Smith.

### 5. Conclusion

A moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Smith has failed to raise any genuine issue of material fact regarding whether ABHS is a state actor, and has therefore failed to sufficiently establish the existence of the first element of his Section 1983 claim.  Accordingly, ABHS is entitled to summary judgment on Smith's Section 1983 claim.

## C. Eighth Amendment Incarceration Requirement

Alternatively, ABHS also seeks summary judgment on Smith's Section 1983 claim contending that the Eighth Amendment does not apply to Smith because Smith was not incarcerated at ABHS.  ECF No. 27 at 9-12.  ABHS asserts that even if Smith could prove ABHS is a state actor, ABHS is still entitled to summary judgment because ABHS' alleged conduct does not fall within the scope of an Eighth Amendment claim.

Smith seeks relief for ABHS' alleged deliberate indifference to Smith's need for medical care.[8] "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In the prison context, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103. The Eighth Amendment's protections do not apply to an individual until the state has "secured a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)). The issue before the Court is whether Smith's sentence to community custody and a residential DOSA falls within the scope of the Eighth Amendment's deliberate

---

[8] As discussed *supra*, Smith's second amended complaint listed the Fourth and Fourteenth Amendments as the grounds for relief. ECF No. 12. At oral argument, and in the third amended complaint, Smith clarified that the basis of Smith's claim is the Eighth Amendment. ECF Nos. 44, 45.

indifference protections. This parties have not cited and the Court finds no authority in the Ninth Circuit that answers this question.

Smith argues that the appropriate measure for an Eighth Amendment deliberate indifference claim is whether the plaintiff is "in custody." ECF No. 39 at 17-18. However, this argument is not supported by Supreme Court's Eighth Amendment deliberate indifference case law, which frames the right in the language of prisons and inmates. *See Estelle*, 429 U.S. at 103-04 ("These elementary [Eighth Amendment] principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration"); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment places restraints on prison officials"); *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"); *see also DeShaney*, 489 U.S. at 198 ("[T]he Eighth Amendment's prohibition against cruel and unusual punishment … requires the state to provide adequate medical care to incarcerated prisoners"). Smith offers no case law to support the argument that mere custody gives rise to Eighth Amendment claims. ECF No. 39 at 17-21. It is well established that an individual may be in custody without being incarcerated. Indeed, the Fourth and Fourteenth Amendments provide protection from deliberate indifference to

medical needs for individuals who are in custody (such as in pretrial detention) but not incarcerated. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996).

Smith also argues that the policy underlying the Eighth Amendment should give rise to an Eighth Amendment claim here. ECF No. 39 at 18-20. Smith contends that because he was reliant on ABHS to meet his medical needs, these facts give rise to an Eighth Amendment claim. *Id.* However, an individual's dependence on the state to meet their medical needs does not inherently give rise to an Eighth Amendment claim. For example, the Supreme Court has recognized a distinction between legal protections for convicted criminals and legal protections for civilly committed individuals, who are similarly dependent on the state for their basic needs to be met. *Youngberg v. Romeo*, 457 U.S. 307, 314-16 (1982). Civilly committed individuals have a right to adequate medical care, but this interest is protected by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Id.* at 324. The comparison between civil commitment case law and Eighth Amendment case law further supports the Court's conclusion that the distinguishing element of an Eighth Amendment deliberate indifference claim is incarceration.

It is debatable whether Smith may have been in a form of custody, but he was not incarcerated at ABHS. Smith was sentenced to a 24-month term of

community custody, subject to the condition that he complete six months of residential substance abuse treatment, and Smith's judgment imposes a community-based DOSA rather than a prison-based DOSA. Smith received this sentence as an alternative to imprisonment. Smith elected to seek treatment at ABHS' facility. ABHS' facility was not locked and ABHS was not authorized to confine Smith or apprehend him in the event he absconded.[9]

Smith cites Washington State authority that community custody is a form of custody. ECF No. 39 at 17-20. However, this is not the standard by which an Eighth Amendment deliberate indifference claim is measured. Instead, the deliberate indifference setting applies in the prison setting. Because Smith's

_____

[9] Smith argues that absconding from a residential substance abuse treatment facility "is prosecuted in Washington as felony escape." ECF No. 39 at 20-21. Smith's cited authority does not support this assertion. *State v. Carlson*, 178 P.3d 371, 143 Wash. App. 507 (Div. II 2008) (offender was subject to escape from custody charge for failure to timely return to work release facility). Furthermore, while the DOC's DOSA regulations indicate that an individual who fails to complete residential treatment "will serve a period of confinement," this is not specified as punishment by a separate escape from custody charge. ECF No. 40-1 at 8.

voluntary participation in community-based substance abuse treatment as an alternative to incarceration does not rise to the level of incarceration, the Eighth Amendment's deliberate indifference protections do not apply to Smith's claim. Accordingly, ABHS is entitled to summary judgment on Smith's Section 1983 claim on this alternative ground.

## CONCLUSION

In the absence of any genuine issue of material fact, ABHS is entitled to judgment as a matter of law on Smith's Section 1983 claim on two separate grounds, because ABHS is not a state actor and because the Eighth Amendment does not apply to ABHS' conduct.

Having dismissed the federal claim over which this Court had subject matter jurisdiction, the Court must now decide whether to exercise supplemental jurisdiction over Smith's remaining state law negligence claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant ABHS' Motion for Summary Judgment on the Section 1983 claim (**ECF No. 27**) is **GRANTED**.

2. Plaintiff's Section 1983 claim is DISMISSED.

3. The parties are instructed to file briefing on the issue of supplemental jurisdiction within 30 days of the date of this order.

1    4.    The Clerk's Office is directed to enter this Order and provide copies

2  to counsel.

3    DATED August 28, 2018.

4                          *s/Mary K. Dimke*
                          MARY K. DIMKE
5                UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 30